**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Michael F. O'Shaughnessy, a Special Agent with the Drug Enforcement Agency, being duly sworn, depose and state as follows:

**INTRODUCTION**

1. I have been a Special Agent with the U.S. Drug Enforcement Administration ("DEA") since 1997. As a Special Agent, I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. Prior to 1997, I was employed as a Special Agent with the U.S. Customs Service ("USCS") beginning in 1990. I am currently assigned to the Boston Organized Crime Drug Enforcement Task Force ("OCDETF") Strike Force, which is a multi-agency Strike Force incorporating various law enforcement agencies, including the DEA, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the Federal Bureau of Investigation ("FBI"), Immigration and Customs Enforcement Homeland Security Investigations ("HSI"), the U.S. Marshals Service ("USMS"), and the Internal Revenue Service ("IRS"), among other state and local law enforcement agencies, that investigates federal narcotics violations, and criminal offenses.

3. In total, I have approximately 29 years of law enforcement experience, all of which have been focused on the investigation of violations of the Controlled Substances Act. I have received training in state and federal drug trafficking laws, narcotics investigations, interdiction of narcotics and/or illegal proceeds, searches and seizures under the Fourth Amendment, asset forfeiture, and money laundering.

4. In the course of participating in investigations of drug trafficking, I have conducted or participated in surveillance, the purchase of illegal drugs, undercover purchases of narcotics,

the execution of search warrants, debriefings of subjects, witnesses, and informants, and reviews of consensually recorded conversations and meetings. I have been the affiant of several Title-III applications and renewal applications. Additionally, I received specialized training in illegal drug smuggling and distribution investigations. As a DEA Special Agent, I have participated in the investigation and prosecution of criminal organizations involved in the distribution of controlled substances and related money laundering violations, both international and domestic. I have participated in the preparation and execution of several search warrants resulting in the location and seizure of evidence of narcotics trafficking and assets derived from narcotics trafficking and other illegal activities.

5. I have also received specialized training regarding the activities of narcotics traffickers, including the methods used to package, store, and distribute narcotics, and the methods used by narcotics traffickers to conceal and launder the proceeds of their narcotics-trafficking activities. Over the course of my assignments with the DEA and the U.S. Customs Service, I have debriefed hundreds of defendants, informants, and witnesses with personal knowledge about narcotics-trafficking activities and the operation of narcotics trafficking organizations. I personally have participated in many aspects of narcotics investigations, including conducting surveillance, using confidential informants, acting in an undercover capacity, and executing search warrants.

6. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit come from my training and experience, and information obtained from other agents, officers, and witnesses. The dates and times in this affidavit are approximate.

## PURPOSE OF AFFIDAVIT

7. This affidavit is being submitted in support of a criminal complaint against Rafael ASHWORTH, charging that on November 17, 2019, he did knowingly and intentionally possess

with intent to distribute 40 grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a) and (b)(1)(B)(vi) and (viii).

8. This affidavit does not set forth all the facts developed during the course of this investigation. Rather, it sets forth only those facts that are necessary and sufficient to establish probable cause to believe that the defendant identified herein has committed the above-described controlled substance offense.

## Probable Cause

9. On November 17, 2019, at approximately 2:30 p.m., the Natick Police Department received information from the Suffolk University Police Department that a female student had not been seen or heard from in approximately four days and that she might be staying with her boyfriend, who lived at 7 Morse Street, Apartment #1, Natick, Massachusetts.[1] After the call, a Natick Police Officer and three Natick firefighters went to 7 Morse Street to perform a wellbeing check for N.F. After arriving at the location, the officer spoke with the landlord, who confirmed that ASHWORTH alone rented the apartment.

10. A neighbor on the scene who knew ASHWORTH entered the apartment, which was unlocked. The neighbor reported that a person appeared to be passed out upstairs. At that time, the officer and firefighters entered the apartment. The apartment door entered into a small living area that was messy and had left over food and dirty dishes on the floor. At the top of the stairwell, which led to a bathroom and kitchen and dining area, one of the firefighters encountered

---

[1] The name of the student is being withheld at this time to protect her privacy and the privacy of her family. She is referred to herein only by her initials, N.F.

ASHWORTH, who was sitting on the floor at the threshold of his bedroom. The lights were off in the bedroom, and ASHWORTH appeared to have been asleep prior to the arrival of the officer and firefighters. ASHWORTH said he was fine and did not need any assistance.

11. The officer explained to ASHWORTH that they had received a call to check on the wellbeing of N.F. ASHWORTH said he knew N.F. but that he had not seen her "in weeks." ASHWORTH again claimed he was alright and did not need assistance. The officer and firefighters did not enter or examine inside the bedroom while speaking to ASHWORTH. After seeing no evidence of a female being present in the apartment, the officer and firefighters left.

12. Later that day at approximately 4:20 p.m., a man walked into the Natick Police station and reported there was an overdose at 7 Morse Street, Apartment 1. The man did not give his name and left in a hurried manner.

13. Natick Police Officers returned to the location to conduct another wellbeing check. An officer entered the apartment and found ASHWORTH kneeling over a sink in the second floor bathroom. ASHWORTH was speaking erratically, acting oddly, and staring blankly as if he were under the influence of drugs. It was dark inside the apartment, so the officer turned on his flashlight. The officer pointed the flashlight into ASHWORTH's bedroom where he could see a woman's body lying on top of the bed. The woman was later identified as N.F. Natick firefighters on scene pronounced N.F. dead, and based on the condition of her body, determined that she had been dead for some time. When asked about the identity of the woman, ASHWORTH claimed she was a 16 year old high school student and that she had been dead "since last night." ASHWORTH claimed he had been gone all day and had arrived home just before the officers arrived. ASHWORTH was assisted out of the apartment and taken to a hospital for medical evaluation.

14. The officer who found N.F. also saw, in plain view, a large pill press covered in white powder on top of a desk in ASHWORTH's bedroom. Officers obtained a state search warrant and later returned to search the apartment.

15. During the search, officers recovered the pill press, which I know from my training and experience is used to manufacture illegal drugs. Next to the pill press, officers recovered a bowl that contained a white powder and clear plastic bags, which I know from my training and experience are commonly used to package drugs for distribution. Inside the top drawer of the desk to which the pill press was mounted, officers recovered approximately 100 grams of a tannish, pressed substance, which field tested positive for fentanyl and methamphetamine. Inside a safe located in the same bedroom, officers recovered pills, which were stamped to appear to be Xanax. On the dining room table, officers observed a small amount of white powder, which field tested positive for cocaine. Officers also recovered a large quantity of substances used to dilute or "cut" drugs, two digital scales, three cell phones, an iPad tablet, additional clear plastic bags, and a metal sifter.

## CONCLUSION

Based on the information set forth above, I believe probable cause exists to believe that ASHWORTH possessed with intent to distribute 40 grams or more of a substance containing a detectable amount of fentanyl and 50 grams or more of a substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841.

//
//
//

I, Michael F. O'Shaughnessy, having signed this Affidavit under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information, and belief.

_____
MICHAEL F. O'SHAUGHNESSY
DEA SPECIAL AGENT

Subscribed and sworn to me this the 21st day of November 2019.

_____
HONORABLE DONALD L. CABELL
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

