```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
         v.                 )    Cr. No. 19-10477-MLW
                            )
RAFAEL ASHWORTH,            )
     Defendant.             )
```

MEMORANDUM AND ORDER

WOLF, D.J.                                    September 25, 2022


I. SUMMARY

Defendant Rafael Ashworth is in this case charged with committing two federal offenses. It is alleged that he possessed with intent to distribute 40 grams or more of fentanyl, 50 grams or more of methamphetamine, and heroin. It is also alleged that crime resulted in the death of a young woman, Nicole Fusaro.

The evidence against Ashworth resulted from two entries into his apartment without a search warrant by officers of the Natick, Massachusetts Police Department ("Natick"). Ashworth filed a Motion to Suppress the evidence obtained, directly or indirectly, as a result of those entries (the "Motion"). He contends that the searches and resulting seizures were unreasonable and, therefore, violated his rights under the Fourth Amendment to the United States Constitution. He does not claim that any statements he made should be suppressed because his Fifth Amendment rights were violated. The government opposed the Motion. The court conducted a hearing

on the Motion at which the two Natick police officers whose conduct is at issue testified.

For the reasons explained in this Memorandum, the court finds that neither entry by the officers was unreasonable because when each entered he had an objectively reasonable basis to believe that there was a person in the apartment in need of emergency assistance to protect him or her from imminent harm, possibly including death. Therefore, neither entry violated Ashworth's rights under the Fourth Amendment. Accordingly, the Motion is being denied.

II. FACTS

The following facts were proven by a preponderance of the evidence at the August 17, 2022 hearing on the Motion.

On November 17, 2019, Nicole Fusaro was a 24-year-old Suffolk University student. Nicole's mother called the Suffolk University Police Department ("Suffolk") that day. Mrs. Fusaro said that she had been unable to reach Nicole for three days, which was unusual, and that Nicole had not used her credit card for two days, which was also unusual. Mrs. Fusaro reported that at her request the Boston Police Department had gone to Nicole's apartment that day and found neither Nicole nor anything out of the ordinary.

Suffolk Police Officer Michael McCartney then also visited Nicole's apartment to do a well-being check and found no one there. Mrs. Fusaro subsequently told Suffolk that Nicole might be with

her friend "Rafael," who Suffolk later identified as Rafael Ashworth. Suffolk's search of information available on the internet indicated that in 2018 Ashworth had been arrested and charged with possession and distribution of drugs. Suffolk also learned that Ashworth lived at 7 Morse Street, Apartment 1 in Natick, Massachusetts.

McCartney contacted Natick and asked it to conduct a well-being check on Nicole Fusaro, who might be at 7 Morse Street in Natick. Suffolk did not tell Natick about Ashworth's drug charges or anything else.

As reported by Natick Police Officer Ryan Hall, on November 17, 2019, at approximately 2:27 p.m., he "was dispatched to 7 Morse Street Apt. 1 for a well being check. Dispatch related that we were looking for a Nicole Fusaro who might be staying with a male party at that residence." Ex. 14, Aug. 17, 2022 Hr'g at 1; Aug. 17, 2022 Hr'g Tr. (Dkt. No. 97) ("Tr.") at 39. Hall was not told why he had been sent to conduct the well-being check or anything else. Hall understood a well-being check could be conducted for a range of reasons, including a parent wanting a check on a child or concern that someone might be having a medical episode. He did not know what prompted the request that he look for Nicole Fusaro.

Hall drove to 7 Morse Street. Like all other Natick police officers, he had received training bulletins that informed him that in 2019 some people were taking heroin without knowing that

3

it contained fentanyl, which could kill them. Therefore, Natick police officers had in their vehicles Narcan, an antidote that if administered in time could keep an overdose from becoming fatal. Natick firefighters, who had more medical training than police officers, regularly accompanied the police on well-being checks. They carried larger doses of Narcan than the police and had other drugs that they could administer to counteract an overdose as well.

When he arrived at 7 Morse Street, Hall spoke to a firefighter, who told him that no one had answered the door. Hall explained to a neighbor who was there, Dennis Mabee, that they were looking for Nicole Fusaro to check on her well-being. Mabee said he did not know Nicole Fusaro, but was acquainted with Ashworth, who lived in Apartment 1 at 7 Morse Street. Mabee then called the landlord and spoke to him before handing Hall the phone. Hall told the landlord that he was a police officer looking for Nicole Fusaro. The landlord said that he rented an apartment at 7 Morse Street to Rafael Ashworth alone and did not know of Nicole Fusaro, but that Ashworth did have female friends visit.

Without being asked or directed by Hall or the firefighters to do so, Mabee went into Ashworth's unlocked apartment and up the stairs to the second floor of it. When Mabee came back downstairs he spoke to a firefighter. The firefighter told Hall that there was someone who appeared to be passed out upstairs.

The firefighters then entered the apartment. Hall followed them. He saw a futon or mattress set up like a bed in the first floor living room, and followed the firefighters to the second floor.

When Hall got to the second floor, he saw Ashworth sitting on the floor in his boxer shorts, with a blanket wrapped around his shoulders. A firefighter asked if he needed any assistance. Ashworth said he did not.

Hall then told Ashworth that Natick had received a request to check on the well-being of Nicole Fusaro. Ashworth said he had not seen her in weeks. Ashworth reiterated that he was "alright" and did not need assistance. Tr. at 44; Ex. 14. Hall and the firefighters then left.

On November 17, 2019, Natick Police Officer Scott Lacerra began his shift at 4:00 p.m. At approximately 4:20 p.m., the Natick dispatcher told him that a person had walked into the lobby of the station and said an overdose was occurring at 7 Morse Street. Lacerra was not told anything else. Among other things, Lacerra did not know that Hall had been to 7 Morse Street about two hours earlier.

Lacerra drove with his partner, Officer James Keohane, to 7 Morse Street, which was across the street about 350 feet from the police station, in about a minute. Based on bulletins and his training as a drug recognition expert, he too knew that in 2019

5

people sometimes used heroin that they did not know contained fentanyl, overdosed, and died. Lacerra had Narcan, but did not bring it into the apartment at 7 Morse Street because firefighters were already there, and he knew that they had larger doses of Narcan and other drugs to administer to someone overdosing.

Lacerra, Keohane, and Natick firefighters entered 7 Morse Street together through an unlocked door. Lacerra went up the stairs first. On the first floor he saw a living room that also appeared to be a makeshift bedroom. On the second floor he saw Ashworth, in his underwear, kneeling by the bathroom sink with his head on the counter. When Lacerra spoke to him, Ashworth turned his head and looked at Lacerra with a blank stare. Lacerra told Ashworth that they had received a report of a drug overdose and asked if he was the only one in the apartment. Ashworth responded that "he guessed so." Tr. at 53, 68.

In Lacerra's experience, a person overdosing on heroin or fentanyl is usually unconscious, turning blue, foaming at the mouth, and has shallow breathing. Ashworth was conscious and coherent. Lacerra did not believe Ashworth was overdosing. He did not give Ashworth Narcan. See id. at 83. Nor did the firefighters, who were trained to administer it when they believed it was necessary. See id.

Lacerra thought Ashworth was under the influence of drugs or alcohol, but did not believe that he was the person reportedly

6

overdosing at 7 Morse Street. In part because Ashworth said he "guessed he was the only person there," id. at 68, 78, Lacerra was concerned there might be someone else in the apartment overdosing and in need of Narcan, id. at 78. Therefore, he went through the small kitchen to the door of a bedroom.

The bedroom was dark. Lacerra turned on his flashlight and looked in. Id. at 79. He saw a pill press commonly used to manufacture drugs next to a bowl of white powder. He also saw a bed with something on it that appeared strange. He went into the bedroom and saw that it was a naked female on the bed. He called to the firefighters that he discovered a person who might be dead. They came into the bedroom and confirmed that the female, who proved to be Nicole Fusaro, was deceased.

Lacerra went into the kitchen, where Ashworth was then seated at a table. In plain view was what Lacerra recognized to be evidence of drug distribution, including white powder that appeared to him to be fentanyl.

Without administering Miranda warnings, Lacerra asked Ashworth about the person in the bed. Ashworth said it was a 16-year-old high school student who died the previous night. Id. at 57. He also said he had been out all day, and had returned home just before Lacerra and the firefighters arrived. Id. In response to a question by Lacerra, Ashworth said he did not know what the white powder was.

Lacerra then contacted the Natick dispatcher and requested that a sergeant and a detective come to the apartment. Ex. 15, Aug. 17, 2022 Hr'g; Tr. at 58. Sergeant Chad Howard and Detective Brian Bosselman responded.

Lacerra and his partner, Keohane, helped Ashworth down the stairs. Because of Ashworth's mental and physical condition, the firefighters took him to a local hospital.

Bosselman then filed an application for a search warrant for 7 Morse Street, Apartment 1, and a supporting affidavit. See Dkt. No. 81-1. In his affidavit, Bosselman stated that Lacerra had found in a bedroom at 7 Morse Street, Apartment 1 the dead body of a naked female. See id. He also wrote that Lacerra had seen in plain view a pill press that was a device used to manufacture illegal narcotics, a bowl with white powder that appeared to Lacerra to be a "cutting agent," and glassine baggies which Bosselman knew were often used in the sale of narcotics. See id. Bosselman also reported that a digital scale and baking soda, that is often used as a cutting agent in the manufacture of illegal narcotics, were in plain view on the dining room table. Id.

Based on this information, on November 17, 2019, a Clerk Magistrate found there was probable cause to issue a warrant to search 7 Morse Street, Apartment 1 for drugs and paraphernalia used to manufacture or distribute illegal drugs. Id. The search was conducted the same day. Among other things seized were 101

8

grams of fentanyl and methamphetamine mixture, a stainless steel pill press, two digital scales, and other items which may be evidence of the illegal possession and distribution of drugs.

In a Superseding Indictment, Ashworth is charged in Count 1 with possession with intent to distribute 40 grams or more of fentanyl, 50 grams or more of methamphetamine, and heroin. In Count 2, he is charged with distribution and possession with intent to distribute fentanyl resulting in death.

As explained earlier, Ashworth filed a Motion to Suppress based on alleged violations of his Fourth Amendment rights. More specifically, he alleges that the two November 17, 2019 warrantless entries into his apartment were unreasonable. Therefore, he asserts, the statements that he made to Officers Hall and Lacerra, evidence of what they observed, and evidence seized pursuant to the warrant issued based on information obtained during the warrantless entries should be found to be inadmissible at trial.[1] The government filed an opposition to the Motion.

---

[1] Ashworth did not move to suppress statements he made and evidence derived from them on the basis of his Fifth Amendment right to receive Miranda warnings that would be required if he was in custody. See Miranda v. Arizona, 384 U.S. 436 (1966). This issue was mentioned at the August 17, 2022 hearing. If requested, the court will provide Ashworth an opportunity to file another motion to suppress based on the Miranda issue.

An evidentiary hearing on the Motion was held on August 17, 2022. Hall and Lacerra testified, and 15 exhibits were made part of the record.

III. DISCUSSION

A. The Legal Standards

Generally, evidence that is obtained illegally is not admissible at trial. See, e.g., Wong Sun v. United States, 371 U.S. 471, 487-88 (1963). This exclusionary rule "operates as a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." United States v. Leon, 468 U.S. 897, 906 (1984) (internal quotation marks omitted).

As the Supreme Court has written:

> The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The "'very core'" of this guarantee is "'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'"

Caniglia v. Strom, 141 S. Ct. 1596, 1599 (2021) (quoting Florida v. Jardines, 569 U.S. 1, 6 (2013)) (alteration in original). Therefore, "searches and seizures inside a home without a warrant are presumptively unreasonable." Michigan v. Fisher, 558 U.S. 45, 47 (2009) (quoting Groh v. Ramirez, 540 U.S. 551, 559 (2004)). However, "the exigencies of the situation [may] make the needs of law enforcement so compelling that the warrantless search is objectively reasonable." Id. (quoting Mincey v. Arizona, 437 U.S.

10

385, 393-94 (1978)) (alteration in original). One such exigency is "the need to 'render emergency assistance to an injured occupant or to protect an occupant from imminent injury.'" Caniglia, 141 S. Ct. at 1599 (quoting Kentucky v. King, 563 U.S. 452, 460 (2011)); see also Brigham City v. Stuart, 547 U.S. 398, 403 (2006) ("One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury.").

In Cady v. Dombrowski, 413 U.S. 433, 441, 447-48 (1973), the Supreme Court held that there is a "community caretaking" exception that permits the warrantless search of the trunk of a disabled vehicle that has been towed. In Caniglia, 141 S. Ct. at 1598, 1599, the Supreme Court clarified that the "community caretaking exception" to the warrant requirement that it had found in Cady did not apply to a warrantless entry into a home to conduct a "welfare check." Implicitly recognizing that the search of a home involves a greater intrusion on personal privacy than the search of a disabled vehicle, the Court stated that there is "a constitutional difference" between the search of an impounded vehicle and the search of a home because "[w]hat is reasonable for vehicles is different from what is reasonable for homes." Id. at 1599, 1600. However, as indicated earlier, in Caniglia the Court reiterated that the need to render emergency assistance to an injured occupant or to protect an occupant from imminent injury is

an exigent circumstance justifying a warrantless entry into a home. Id. at 1599.

"This emergency aid exception does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises. It only requires an objectively reasonable basis for believing that a person within [the house] is in need of immediate aid." Fisher, 558 U.S. at 47 (internal quotation marks and citations omitted) (alteration in original); see also United States v. D'Andrea, 648 F.3d 1, 11 n.14 (1st Cir. 2011).

To satisfy the objectively reasonable basis requirement, the government need not prove that there was probable cause to believe that someone in the home was in need of immediate aid. See Hall v. Walsh, 884 F.3d 16, 23 (1st Cir. 2018). Moreover, the "basis need not approximate probable cause." Id. (internal quotation marks omitted).

If a warrantless entry is objectively reasonable, the manner and scope of the ensuing search must also be reasonable. See United States v. Porter, 594 F.3d 1251, 1258 (10th Cir. 2010) (citing United States v. Najar, 451 F.3d 710, 718 (10th Cir. 2006)); United States v. Snipe, 515 F.3d 947, 953 (9th Cir. 2008). Whether the conduct after the entry was reasonable is decided by "the realities of the situation presented by the record . . . consider[ing] the

12

facts from the viewpoint of prudent, cautious, and trained officers." Id. (internal quotation marks and citations omitted).

In certain circumstances, police may seize evidence that is in plain view without a warrant. See Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). Among other things, the police must not violate the Fourth Amendment in getting to the place from which the evidence can be plainly viewed. See Horton v. California, 496 U.S. 128, 136 (1990).

In Leon, 468 U.S. at 921-23, the Supreme Court held that with regard to a search conducted pursuant to a warrant, evidence is admissible if the warrant was lawfully obtained and the police reasonably relied on the magistrate judge's erroneous finding that the warrant was supported by probable cause. See also United States v. Woodbury, 511 F.3d 93, 99 (1st Cir. 2007). The First Circuit has held that this good faith exception to the exclusionary rule applies even if "the warrant affidavit forthrightly discloses facts that establish probable cause, but one of the facts essential to establishing probable cause . . . was obtained as a result of an unconstitutional search." United States v. Bain, 874 F.3d 1, 21 (1st Cir. 2017).

B. Analysis

In this case, both the first and second entries of Ashworth's apartment were based on facts that provided an objectively reasonable basis for a prudent police officer to believe that there

13

was a person inside who needed assistance to prevent imminent injury and possibly death. In addition, the police officers' actions in Ashworth's apartment were also objectively reasonable. Therefore, the motion to suppress evidence obtained before the search warrant was obtained and executed is not meritorious.

With regard to the first entry, Hall and others in the Natick Police Department only knew that Suffolk had asked them to do a well-being check for Nicole Fusaro, who might be staying at 7 Morse Street. They had no information from Suffolk indicating that, if she was there, she was injured or in danger of imminent injury. Therefore, if Hall had entered Ashworth's apartment without a warrant to do the requested well-being check, his conduct would have been unreasonable and in violation of the Fourth Amendment. See, e.g., D'Andrea, 648 F.3d at 11 (holding that despite the fact that there was powerful evidence that a child had been abused in the past, the warrantless entry was unlawful because "the record [did] not indicate that abuse was then ongoing or that further abuse was imminent").

However, Hall did not enter Ashworth's apartment based on the information he had received concerning Nicole Fusaro in order to check on her well-being. Rather, he did not go into the apartment until Ashworth's neighbor, Mabee, acting as a private citizen,[2]

---

[2] The Fourth Amendment prohibits only unreasonable searches and seizures by the government. United States v. Silva, 554 F.3d 13,

14

entered the apartment through an unlocked door, returned, and reported that there was someone in the apartment who appeared to be passed out.

As this case may unfortunately indicate, in 2019 many people in Massachusetts, and elsewhere in the United States, were overdosing on drugs, particularly fentanyl, and often dying. If treated with Narcan or another antidote in time, some such deaths could be prevented. In November 2019, a reasonable police officer would have known both of these facts, as Hall did. That is why Hall and the firefighters who were also outside Ashworth's apartment had Narcan with them. Having been told that there was someone in the apartment who appeared to be passed out, it was reasonable for Hall to follow the firefighters in to see if there was a person there urgently in need of their possibly life-saving assistance.

Hall's conduct while in Ashworth's apartment was also reasonable. He was lawfully there. Ashworth assured Hall that he was "alright" and did not need assistance. Hall had come to 7 Morse Street to check on Nicole Fusaro's well-being. It was natural and reasonable for him to tell Ashworth that. Ashworth does not contend that he was then detained or felt compelled to respond. He was not

---

18 (1st Cir. 2009) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)). Ashworth does not contend that Mabee was acting as an agent of the government when he entered Ashworth's apartment. See Tr. at 111.

required to say anything. However, he chose to tell Hall that he had not seen Nicole Fusaro for weeks. "The Supreme Court has repeatedly emphasized that not all personal intercourse between the police and citizens rises to the level of a stop or seizure." United States v. Young, 105 F.3d 1, 5-6 (1st Cir. 1997) (citing Florida v. Bostock, 501 U.S. 429, 434 (1991)). "Police conduct falls short of triggering Fourth Amendment protections when, from the totality of the circumstances, [it is] determine[d] that the subject of any police interaction would have felt free to terminate the conversation . . . ." Id. at 6. With regard to Hall's brief conversation with Ashworth concerning Nicole Fusaro, this is such a case.

The second entry to Ashworth's apartment by Lacerra about two hours later was also reasonable. He was told that an unidentified person had come to the police station and said that an overdose was occurring at 7 Morse Street. While that person was then unidentified, there was no apparent reason for him to lie. Again, a reasonable police officer would have known that some people were then knowingly or unknowingly taking fentanyl, overdosing, and sometimes dying, but could be saved if promptly administered Narcan or certain other drugs. As Lacerra had been given information that someone was then suffering from an overdose, which a reasonable officer would know could be fatal, it was reasonable for Lacerra to rush to 7 Morse Street and enter the apartment to try to help.

Although Lacerra found Ashworth evidently impaired, he did not appear to be overdosing on heroin or fentanyl. Lacerra had seen a make-shift bed on the first floor, suggesting that two people were living in the apartment. When Ashworth said he "guessed" he was the only person in the apartment, a prudent, cautious, trained officer like Lacerra, would reasonably be concerned that there was someone in addition to Ashworth in the apartment who was overdosing and in urgent need of assistance. It was, therefore, reasonable for Lacerra to conduct a quick search of the apartment for a second person.

As the bedroom was dark, it was reasonable for Lacerra to turn on his flashlight and look in. When he saw something strange on the bed, it was reasonable for him to enter the bedroom, where he could see it was a naked female who appeared to be dead.

As it was objectively reasonable in the circumstances known to Lacerra, his conduct did not violate Ashworth's rights under the Fourth Amendment.[3]

In conducting his lawful search of Ashworth's apartment, Lacerra saw in plain view, among other indicia of drug dealing, what appeared to him as a trained drug recognition expert to be a

---

[3] Lacerra's subsequent questioning of Ashworth without informing him of his Miranda rights may have violated the Fifth Amendment. See Miranda, 384 U.S. at 467. However, the Motion relies solely on alleged violations of Ashworth's Fourth Amendment rights. As indicated earlier, the court will, if requested, permit Ashworth to file another motion to suppress on Fifth Amendment grounds.

pill press used to manufacture illegal narcotics, and white powder that appeared to him to be fentanyl, a drug it would have been illegal for Ashworth to possess or distribute. Therefore, Natick applied for a warrant to search Ashworth's apartment, which a Clerk Magistrate issued. Ashworth requests that the evidence seized pursuant to the warrant be suppressed as the proverbial "fruit of the poisonous tree," Dkt. No. 79 at 2, meaning evidence derived from the two alleged unlawful entries of Ashworth's apartment by Hall and Lacerra.

This claim is also unmeritorious. First, neither Hall nor Lacerra violated Ashworth's Fourth Amendment rights in getting to where they saw evidence in plain view of the illegal manufacture and distribution of drugs. See Horton, 496 U.S. at 136. Second, the application for a search warrant honestly and accurately disclosed facts that justified the judicial officer's finding of probable cause. Therefore, the good faith exception to the exclusionary rule renders the seized evidence admissible because the Natick officers reasonably relied on the warrant in conducting the search and seizure. See Leon, 468 U.S. at 921-23; Bain, 874 F.3d at 21; United States v. Levin, 874 F.3d 316, 322 (1st Cir. 2017). This would be true even if, contrary to the court's conclusion, evidence supporting one or more of the facts essential to establishing probable cause was obtained as a result of an unconstitutional search. See Bain, 874 F.3d at 21.

Therefore, the Motion is being denied.

IV. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Defendant Rafael Ashworth's Motion to Suppress (Dkt. No. 78) is DENIED.

2. Counsel shall confer and, by October 12, 2022, report whether defendant requests a pre-trial conference, a Rule 11 hearing, or an opportunity to file a motion to suppress statements made on November 17, 2019 on Fifth Amendment grounds.

3. All time until October 12, 2022 is EXCLUDED for Speedy Trial Act purposes because the interests of justice served by providing the defendant the opportunity to confer with his counsel and the government concerning how he wishes to proceed outweigh the interests of the public and the defendant in a speedy trial. See 18 U.S.C. §3161(h)(7)(A).

/s/ Mark L. Wolf
UNITED STATES DISTRICT JUDGE