UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Crim. No. 19-cr-10477-WGY |
| RAFAEL ASHWORTH, | ) |
| | ) |
| Defendant. | ) |

## GOVERNMENT'S SENTENCING MEMORANDUM

In November 2019, the defendant Rafael Ashworth was engaged in an active and deadly drug-trafficking operation. He, along with his associates, purchased, pressed, packaged, and sold thousands of counterfeit Xanax and fentanyl pills to his customers. He regularly consulted with his drug-dealing partners about how many kilograms of binder powder they needed to make thousands of narcotics pills, the correct equipment necessary to manufacture different pills, and amount of time needed to ultimately press his deadly product into pill form. He did not have any form of lawful employment. His sole source of income was from selling drugs to his customers. Given the scope of his drug-trafficking operations, it is not surprising that he also supplied drugs to his girlfriend, Nicole Fusaro. In fact, prior to picking her up on the night she died of a drug overdose, the defendant told her that he was "making a play" so they could get "a little lit on thirsty Thursday." He was a drug dealer and was going to give drugs to Nicole.

On the night of November 14, 2019, after Nicole had dinner with her father in Boston, the defendant picked her up and drove her back to his apartment in Natick. After telling her mother and father she loved them over text message and after posting an Instagram message about the defendant on her social media account, no one heard from Nicole Fusaro again. No one heard from her again because some time on the night of November 14, 2019 or the early morning hours

1

of November 15, 2019, Nicole Fusaro died of a drug overdose. She died in the defendant's bed, surrounded by the defendant's drugs and drug paraphernalia, next to a desk with an industrial pill press bolted on top and a bag of 100 grams of methamphetamine, heroin, and fentanyl underneath. The defendant never called the police, never called an ambulance, never ran across the street to the Natick police station, never tried to help Nicole in any way as she lay dying in his bed. Instead of trying to save Nicole's life, Ashworth let her die, in his bed, as her lungs slowly filled with fluid and she stopped breathing. His response to her death was to get high on his own drugs.

The only reason Natick police officers found Nicole, already long deceased, three days later on November 17, 2019, was due to the dogged and determined efforts of her parents, who knew something was wrong, and never stopped calling friends, family, and law enforcement until she was found. Nicole's father even reached out directly to the defendant to ask where Nicole was. Ashworth was no help. He did not answer the calls or text messages from Nicole's father or friends asking where she was. In fact, when police entered his apartment for the first time on November 17, 2019 to look for Nicole, Ashworth told them that he had not seen her in weeks. While Ashworth was telling police officers that he had no idea where she was, Nicole was already lying dead in his bedroom, where the police could not see her. Only later, after the defendant's friend entered Ashworth's apartment, saw Nicole deceased in the bedroom, and reported it to the police, did the police officers re-enter the defendant's apartment and find Nicole. An autopsy confirmed that Nicole died of a drug overdose, with heroin, benzodiazepines, fentanyl, and cocaine in her system – the same drugs the defendant sold in his drug trafficking operation. At trial, both the medical examiner who conducted the autopsy and the defendant's expert witness, a former medical examiner, agreed Nicole died of a drug overdose.

Although the defendant was acquitted at trial of causing the death of Nicole Fusaro as charged in Count Two under the beyond-a-reasonable-doubt standard, the Court heard ample fact and medical evidence to support a finding at sentencing by a preponderance of the evidence that the defendant possessed with intent to distribute and distributed the fentanyl that caused Nicole's death. Because the drugs dealt by the defendant caused Nicole Fusaro's death, at sentencing, this Court should grant an upward variance under 18 U.S.C. § 3553(a) and sentence Ashworth to a term of imprisonment of 10 – 12 years (120 – 144 months) and three years of supervised release to follow his imprisonment.

## I. PROCEDURAL HISTORY

On February 10, 2021, a federal grand jury returned a Superseding Indictment charging the defendant with one count of possession with intent to distribute and distribution of fentanyl resulting in Fusaro's death, and one count of possession with intent to distribute 40 grams or more of fentanyl, 50 grams or more of methamphetamine, and heroin. Docket No. 62. The case proceeded to trial, and on February 6, 2024, the jury found the defendant guilty of possession with intent to distribute fentanyl and possession with intent to distribute 40 grams or more of fentanyl. Docket No. 149. The jury did not find that the fentanyl possessed with intent to distribute by the defendant resulted in Nicole Fusaro's death. *Id.*

## II. ADVISORY SENTENCING GUIDELINES

The Presentence Report ("PSR") prepared by the United States Probation Office ("USPO") found that the defendant was accountable for at least 40 grams but less than 160 grams of fentanyl. PSR ¶ 25. The defendant's base offense level for that quantity of fentanyl is 24. *Id.* Because the defendant has not accepted responsibility, the defendant's total offense level is 24. PSR ¶ 32. The defendant has a total criminal history score of two, which places him in Criminal History Category

3

II. PSR ¶¶ 39-40.[1]  For Count One, the defendant's mandatory minimum term of imprisonment is five years and maximum is 40 years.  For Count Two, the maximum sentence of imprisonment is 20 years.  PSR ¶ 79.  Given the applicable mandatory-minimum sentence, the defendant's Guidelines Sentencing Range ("GSR") is 60 – 71 months' imprisonment and there is a statutory mandatory minimum term of four years of supervised release for Count One.  PSR ¶ 82.  Based on the drug weight attributable to the defendant, the government agrees with the USPO's calculation of the GSR.[2]

### III.    18 U.S.C. § 3553(a) SENTENCING FACTORS

Consideration of the § 3553(a) factors demonstrates that an upward variance is appropriate and that a sentence in the range of 120 – 144 months' imprisonment is sufficient, but not greater than necessary, to meet the goals of sentencing.

#### A. **Upward Variance Based on Nicole Fusaro's Death**

Given the overwhelming evidence that Nicole Fusaro died of a drug overdose, in the defendant's bed, surrounded by the defendant's drugs and paraphernalia, and the fact that the defendant made no effort to save her life, an upward variance is warranted.  "A variant sentence, unlike a departure, is not hemmed in by the language of a particular guideline. Instead, it is a product of the sentencing court's weighing of the myriad factors enumerated in 18 U.S.C. §

---

[1] In Defendant's Objections to the PSR, he argues that his criminal history category of II overrepresents his criminal history and that he intends to challenge a prior conviction for operating under the influence.  However, even if this conviction is eventually set aside due to a problem with the breathalyzer, the decision to vacate it would be based on "reasons unrelated to innocence or errors of law" and should still be counted.  USSG § 4A1.2 app. n.10.  Moreover, a downward departure is also inappropriate because during the commission of the crimes of conviction, the defendant had an active drug-trafficking charge pending in state court and multiple other charges resulting in dismissals, which do not score in his criminal history.  PSR ¶¶ 42 – 49.  Given his pending and dismissed charges, a criminal history category of II cannot be said to overrepresent the defendant's criminal history.

[2] The USPO also found that an upward departure is warranted under U.S.S.G. § 5K2.1 because the defendant's conduct caused Nicole Fusaro's death.  PSR ¶ 97.  Given the forthcoming amendments to U.S.S.G. § 1B1.3 (Relevant Conduct), regarding the exclusion of acquitted conduct, the government is requesting an upward variance under 18 U.S.C. § 3553(a), rather than an upward departure under U.S.S.G. § 5K2.1.

3553(a)." *United States v. Heindenstrom*, 946 F.3d 57, 63 (1st Cir. 2019). "The short of it is that section 3553(a) broadly invites a sentencing court to consider relevant and reliable information concerning the offense of conviction." *Id.* at 64.

At trial, the defendant was found not guilty of the death-resulting charge in the Superseding Indictment, but "[i]t is well settled that a sentencing proceeding differs from a trial." *United States v. Gonzalez-Vazquez*, 34 F.3d 19, 25 (1st Cir. 1994). "[A]n acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof." *United States v. Watts*, 519 U.S. 148, 156 (1997) (quoting *Dowling v. United States*, 493 U.S. 342, 349 (1990)). In fact, courts regularly consider acquitted conduct when determining an appropriate sentence. *See, e.g.*, *United States v. Carvajal*, 85 F.4th 602, 610 (1st Cir. 2023) ("[A]cquitted conduct can be considered at sentencing if the government proves it by a preponderance of the evidence."); *United States v. Cox*, 851 F.3d 113, 121 (1st Cir. 2017) ("Relevant conduct may include acquitted and uncharged conduct."); *United States v. Desimone*, 699 F.3d 113, 128 (1st Cir. 2012) ("A court may consider acquitted conduct in determining the applicability vel non of a sentencing enhancement.") (internal quotation marks omitted); *United States v. Graham*, 146 F.3d 6, 11–12 (1st Cir. 1998) (affirming district court's consideration of related, acquitted conduct for the purposes of loss calculation at sentencing). Significantly, the prosecution must only prove facts upon which it relies at sentencing by a preponderance of the evidence. *United States v. Wright*, 873 F.2d 437, 441 (1st Cir. 1989) ("Case law clearly establishes that the government need not prove the facts used for sentencing beyond a

reasonable doubt.  The Supreme Court has held that the preponderance standard satisfies due process.") (internal quotation marks omitted).

Here, the First Circuit opinion in *United States v. Carvajal*, 85 F.4th 602 (1st Cir. 2023) is squarely on point.  As in the present case, after a trial, the jury convicted the defendant of distribution of fentanyl, but acquitted on the death-resulting charge.  *Id.* at 608.  At sentencing, the trial court, District Judge George A. O'Toole, found by a preponderance of the evidence that the drugs the defendant sold to the victim did cause his death.  Moreover, in making that finding Judge O'Toole relied heavily on the testimony of Dr. Steven Bird, the same expert medical toxicologist and emergency room physician who testified at Ashworth's trial.  *Id.* at 612 (finding Dr. Bird "the most reliable [of the three testifying experts] because he was more exhaustive in his analysis").  Judge O'Toole further found Dr. Elizabeth Laposata, the defendant's expert in the *Carvajal* trial and in Ashworth's trial, "not very helpful."  *Id.*

After finding that the fentanyl distributed by the defendant caused the victim's death, Judge O'Toole ruled that an "upward variance [18 U.S.C. § 3553(a)] or departure [under U.S.S.G. § 5K2.1] was 'entirely appropriate' for an act that 'was not an intentional homicide, but was an intentional distribution of homicidal drugs.'"  *Id.* at 609 (alteration omitted).  Although the defendant's GSR was 51 – 63 months, based largely on finding that the defendant's drugs caused the victim's death, the court sentenced the defendant to 10 years in prison.  *Id.*

          a. <u>The Fentanyl Possessed With Intent to Distribute by the Defendant Caused Nicole Fusaro's Death.</u>

Based on the evidence presented at trial, this Court should find by a preponderance of the evidence that the use of the fentanyl the defendant possessed with the intent to distribute on or about November 15, 2019 caused Nicole Fusaro's death.  Based on the text messages presented as trial exhibits and the testimony of John O'Keefe, there is essentially no doubt that

the defendant distributed counterfeit Xanax pills ("bars" or "zans") and counterfeit Percocet pills which contained fentanyl ("percs" and "perc 30s").  The defendant corresponded with his associates regularly about pill press machines, pill binder material, quantities, prices, packaging, and deliveries.  Ashworth often provided technical expertise about the appropriate pill press parts and the amount of pill binder necessary to produce certain quantities of counterfeit narcotic pills – often describing the days-long production of thousands of pills.

In the defendant's apartment, on the day that the police discovered Nicole Fusaro deceased in Ashworth's bed, the police found a large metal pill press bolted to his desk, sifters, scales, and kilograms of pill binder, a box of which was addressed to the defendant.  Police also found a bag containing 100 grams of powder which contained fentanyl, methamphetamine, and heroin.

The evidence presented at trial showed that the defendant supplied drugs to Nicole Fusaro.  She asked him for "addies" or fake Adderall pills.  The defendant also told her he was "making a play" so they could get "a little lit on thirsty Thursday."  The defendant picked Nicole up in Boston on November 14, 2019 (a Thursday) and drove her back to his apartment.  Prior to meeting Ashworth, Nicole had dinner with her father and was completely lucid and did not appear to be under the influence of any drugs.

The autopsy revealed that Nicole Fusaro died of a drug overdose.  As an otherwise healthy, 24-year-old woman, no medical expert suggested she could have died from anything else.  Nicole had multiple drugs in her system, but Dr. Michelle Matthews, the state medical examiner, testified that she was not trained to untangle which of those drugs actually caused her death.  When asked if there was a type of medical doctor who could make such a determination,

she replied that a toxicologist could do so.  Dr. Steven Bird, a board-certified medical toxicologist and emergency room physician, testified that it was the fentanyl that killed Nicole.

Given this evidence, all presented at trial, this Court should find by a preponderance of the evidence that the use of the fentanyl Ashworth possessed with the intent to distribute caused Nicole Fusaro's death.

### b. An Upward Variance is Appropriate under the Circumstances.

Here, because the fentanyl the defendant possessed with the intent to distribute the night Nicole Fusaro died caused her death, an upward variance and a sentence of 10 – 12 years in prison is reasonable.  As calculated by the USPO, the defendant's total offense level is 24 and his GSR 60 – 71 months' imprisonment.  PSR ¶ 82.  A sentence of 10 – 12 years (120 – 144 months) represents an upward variance of approximately seven levels (total offense level 31, 121 – 151 months).  This upward variance is reasonable under the circumstances and comparable or lower than sentences other courts have imposed in similar drug overdose death-resulting cases.  *See, e.g.*, *Carvajal*, 85 F.4th at 609 (GSR of 51 – 63 months, sentence of 120 months, eight-level upward variance); *United States v. McKinnie*, *McKinnie*, 21 F.4th 283, 288 (4th Cir. 2021) (GSR of 21 – 27 months, sentence of 120 months, 15-level upward departure); *Heindenstrom*, 946 F.3d at 61 (GSR of 8 – 14 months, sentence of 60 months, 14-level upward variance); *United States v. Waver*, 754 F. App'x 56, 57 (2d Cir. 2019) (GSR of 33 – 41 months, sentence of 84 months, eight-level upward variance); *United States v. Nossan*, 647 F.3d 822, 825 (8th Cir. 2011) (GSR of 10 – 16 months, sentence of 60 months, 12-level upward departure); *United States v. Bollinger*, 893 F.3d

1123, 1124 – 25 (8th Cir. 2018) (GSR of 6 – 12 months, sentence of 130 months, 22-level upward departure).

This Court should find that the use of the fentanyl the defendant possessed with intent to distribute caused Nicole Fusaro's death and upwardly vary from the defendant's GSR approximately seven levels for a sentence of imprisonment of 10 – 12 years (120 – 144 months).

### B. <u>Nature of the Offense</u>

This Court is well aware that fentanyl is a deadly drug that has wreaked havoc in the United States, and more specifically in Massachusetts, over the past several years. Fentanyl remains the primary driver behind the ongoing opioid crisis, with fentanyl involved in more overdose deaths than any other illicit drug.[3] "Nearly 70 percent of all drug overdose deaths in the United States in 2018 involved an opioid."[4] "Fentanyl use and overdose deaths are more widespread across the country as the opioid crisis continues. Overall, fentanyl-involved deaths are still the most concentrated in states in the Great Lakes and Northeast of the United States."[5] Massachusetts has been one of the states hardest hit by the opioid crisis and was among the top five states with the most fentanyl reports in 2019.[6] "The overdose crisis in the United States claims more lives each year than firearms, suicide, homicide, or motor vehicle crashes."[7]

This Court has sentenced many defendants for fentanyl trafficking crimes. Most often, the actual human price this drug exacts from our communities can only be expressed in numbers and

---

[3] U.S. Department of Justice Drug Enforcement Administration, *2020 National Drug Threat Assessment*, available at https://www.dea.gov/documents/2021/03/02/2020-national-drug-threat-assessment#:~:text=The%202020%20National%20Drug%20Threat%20Assessment%20%28NDTA%29%20is,laundering%20of%20proceeds%20generated%20through%20illicit%20drug%20sales., at 7 (last visited April 25, 2024) (hereinafter "DEA 2020 Assessment").
[4] *Id.*
[5] *Id.* at 12.
[6] *Id.* at 8.
[7] United States of America Commission on Combating Synthetic Opioid Trafficking, Final Report (Published February 2022), available at https://www.rand.org/content/dam/rand/pubs/external_publications/EP60000/EP68838/RAND_EP68838.pdf, at vii (last visited April 25, 2024).

statistics like those cited above. However, during the trial of Rafael Ashworth, this Court was able to see first-hand that these statistics are not hypothetical. Each number represents a victim and the countless friends and family members devastated by the loss of their loved ones to this opioid crisis. Fentanyl kills victims like Nicole Fusaro every day in this country. This Court saw the pain still fresh and raw in Nicole's parents as they testified at trial over four years after the death of their only daughter. "The opioid epidemic has wrought a terrible toll on our nation and so many communities within it." *McKinnie*, 21 F.4th at 294 (citing Roni Caryn Rabin, *Overdose Deaths Reached Record High as the Pandemic Spread*, N.Y. Times (Nov. 17, 2021) (describing more than 100,000 overdose deaths between April 2020 and 2021, primarily driven by fentanyl)). The epidemic is real and being felt every day by families across Massachusetts and New England. The defendant's crimes played a direct role in fueling these ghastly death statistics. The nature of the defendant's offenses, dealing deadly drugs to his customers and Nicole Fusaro, a healthy young woman with a bright future, and ultimately killing her, warrant an upward variance and a significant sentence of imprisonment.

C. **Specific and General Deterrence and Protection of the Public**

A significant sentence of imprisonment is warranted to deter others from becoming involved in any way, role, or capacity in the trafficking of fentanyl, as the dangers associated with this deadly drug cannot be overstated. Individuals tempted to engage in drug trafficking must understand that *any* involvement with fentanyl, no matter how minimal, will have immediate and serious consequences. Based on the facts of this case, it is abundantly clear that fentanyl kills people, and those who choose to peddle it, no matter what quantity or where they stand in the hierarchy of their drug-trafficking organizations, are putting lives at risk every day. A significant

term of imprisonment is necessary to send a strong warning to others who might otherwise consider possessing or distributing this dangerous drug.

Considerations of specific deterrence also support the imposition of a sentence of 10 – 12 years' imprisonment. This defendant, unlike so many defendants who come before this Court, had every opportunity to live a full, lawful, and productive life in our community. He is a U.S. citizen with absolutely no bar to lawful employment. He is a graduate of Needham High School, recently ranked 26th among all Massachusetts high schools by U.S. News and World Report.[8] PSR ¶ 70. He attended college and pursued his pilot's and real estate licenses. *Id.* He grew up in a safe community with a supportive mother and stated that he "received support in all areas of his life." PSR ¶ 51. In short, this defendant could have pursued many different lawful avenues in his life. Instead of choosing any of those lawful avenues, he chose to traffic fentanyl. Moreover, the defendant seemed completely undeterred by the fact that he had been arrested and charged with possession with intent to distribute Xanax in January 2019, 11 months before Nicole's death. PSR ¶ 42. He committed the instant crimes of conviction while on pretrial release from Norfolk Superior Court. This defendant clearly did not learn his lesson, and other than changing apartments after his old one was searched by police, continued his deadly business of purchasing, mixing, pressing, packaging, and selling deadly counterfeit narcotic pills. Because the defendant had ample opportunity to pursue lawful employment and had the support of a loving family but still chose to traffic fentanyl, and because he refused to cease his drug-trafficking activities even after being arrested and charged by the state, a significant sentence of imprisonment is warranted to deter this defendant from ever again engaging in his lethal drug trafficking and to protect the public from his crimes.

---

[8] https://www.usnews.com/education/best-high-schools/search?name=needham

11

## IV.     CONCLUSION

Because the fentanyl the defendant possessed with intent to distribute caused the death of Nicole Fusaro, because he ignored opportunities for lawful employment and chose to engage in drug trafficking, and because he refused to cease his criminal behavior even after a state arrest and drug charge, this Court should grant an upward variance under 18 U.S.C. § 3553(a) and sentence Ashworth to a term of imprisonment of 10 – 12 years (120 – 144 months) and three years of supervised release.

June 14, 2024                                              Respectfully submitted,

                                                           JOSHUA S. LEVY
                                                           Acting United States Attorney

                                                 By:       */s/ Stephen W. Hassink*
                                                           Leah B. Foley
                                                           Stephen W. Hassink
                                                           Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have served this sentencing memorandum on all appropriate parties through email on June 14, 2024.

                                                           */s/ Stephen W. Hassink*
                                                           Stephen W. Hassink
                                                           Assistant U.S. Attorney